

# Fourth Court of Appeals

## San Antonio, Texas

### OPINION

No. 04-13-00554-CR

The **STATE** of Texas,
Appellant

v.

J. B. **DANIEL**,
Appellee

From the 216th Judicial District Court, Bandera County, Texas
Trial Court No. CR-12-002
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  August 29, 2014

AFFIRMED

This case stems from a warrantless arrest following a traffic stop. Based on a computer-based vehicle check conducted by the Bandera County Sheriff's Office dispatch, Sergeant Jerald Johnson understood the vehicle being driven by Appellant J. B. Daniel was being operated without the State-required liability insurance. On Sergeant Johnson's request, Deputy Donald Nowlin initiated a traffic stop of Daniel's vehicle. Daniel was subsequently charged with felony possession of a controlled substance. The trial court granted Daniel's motion to suppress the warrantless arrest, and the State brought this interlocutory appeal.

We affirm the trial court's order.

## PROCEDURAL HISTORY

On September 16, 2009, Daniel was arrested and charged with possession of a controlled substance with intent to deliver, namely methamphetamine, following a traffic stop. He was subsequently indicted on charges of felony possession. On June 24, 2010, after an evidentiary hearing, Daniel's first motion to suppress was denied by the trial court.

In May of 2011, Daniel was indicted for the offense of engaging in criminal activity, specifically for the act of possession of the methamphetamine. The State elected to proceed on the engaging in criminal activity charge and dismissed the original felony possession indictment.

In February of 2012, Daniel was reindicted on the possession of methamphetamine with intent to deliver charges stemming from the September 16, 2009 arrest. Daniel filed a second motion to suppress. The parties agreed to stipulate that the same reporter's record created during the first motion to suppress would be considered as part of the court's record during the second motion to suppress.

On August 1, 2013, after additional arguments by counsel and stipulations by the State, the trial court granted Daniel's motion to suppress. The trial court filed its Findings of Fact and Conclusions of Law on November 20, 2013 and the State filed this interlocutory appeal.

## MOTION TO SUPPRESS

### A.    Standard of Review

An appellate court reviews a trial court's ruling on a motion to suppress under an abuse of discretion and disturbs such ruling only if it falls "outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *accord State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Castro v. State*, 373 S.W.3d 159, 163 (Tex. App.—San Antonio 2012, no pet.). "We further apply a bifurcated standard of review, according almost total deference

to the trial court to determine historical facts and those facts which depend upon witness credibility." *Castro*, 373 S.W.3d at 163–64 (citing *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007)).

When the trial court files findings of fact, the appellate court considers all of the evidence in the record and "must determine whether the evidence supports those facts by viewing the evidence in favor of the trial court's ruling." *Id*. at 164 (citing *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009)); *accord Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). When "reasonable suspicion to detain the appellant does not turn on the demeanor and credibility of the witnesses, but on the legal significance of the facts they recounted," an appellate court accepts the trial court's findings of fact as true and reviews de novo "the legal question [of] whether the totality of the circumstances as so construed satisfied the State's burden to prove that the appellant's warrantless investigative detention was supported by reasonable suspicion." *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011) (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)).

## B.    Arguments of the Parties

The State contends the officers reasonably relied on the information provided by the Sheriff's Office Dispatch and that the officers possessed reasonable suspicion that an offense was occurring.

Daniel counters that all of the information relied upon by the Sheriff's Office Dispatch was obtained from the Financial Responsibility Verification Program. He argues that because that information is limited to whether the insurance is confirmed or unconfirmed, the information available to the officers could not amount to a reasonable suspicion.

### C.      Reasonable Suspicion

The State bears the burden to show the officers had at least a reasonable suspicion the defendant either had committed an offense, or was about to do so, before they made the warrantless stop. *Derichsweiler*, 348 S.W.3d at 914 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). We review reasonable suspicion based on the totality of the circumstances. *Id*. (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981) ("[T]he essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account.")). Our analysis considers "'the cumulative information known to the cooperating officers at the time of the stop . . . in determining whether reasonable suspicion exists.'" *Id*. (quoting *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)).

#### 1.      *Investigatory Stop*

Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *accord Ford*, 158 S.W.3d at 492. An officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Sokolow*, 490 U.S. at 7; *accord Ford*, 158 S.W.3d at 492.

"Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford*, 158 S.W.3d at 492. It is not necessary for an officer to pinpoint a specific crime when detaining someone for reasonable suspicion of criminal activity. *Derichsweiler*, 348 S.W.3d at 916–17 ("[I]t is enough that the totality of the circumstances, viewed objectively and in the aggregate, suggests

the realistic possibility of a criminal motive, however amorphous, that was about to be acted upon.").

> 2. *Reasonable Suspicion for Traffic Violation*

Reasonable suspicion "is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Ford*, 158 S.W.3d at 492; *accord Derichsweiler*, 348 S.W.3d at 914. To satisfy the standard of reasonable suspicion, the articulable facts need not "lead inexorably to the conclusion that a particular and identifiable penal code offense is imminent." *Derichsweiler*, 348 S.W.3d at 917. It is enough to satisfy the standard that the information is sufficiently detailed and reliable to support more than an "inarticulate hunch" that something of an apparently criminal nature is brewing. *Id*.

"It is well settled that a traffic violation committed in an officer's presence authorizes an initial stop." *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. [Panel Op.] 1982); *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). "The State is not required to show a traffic offense was actually committed, but only that the *officer reasonably believed* a violation was in progress." *Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.) (emphasis added); *accord Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

**D.     Hearings Before the Trial Court**

Because our inquiry is limited to the reasonable suspicion for initiating the traffic stop, we limit our discussion to that portion of the testimony.

> 1. *First Motion to Suppress*

During the June 2010 hearing on the first motion to suppress, the State relied on the testimony of two witnesses—Bandera County Sergeant Jerald Johnson and Bandera County Sheriff's Deputy Donald Nowlin.

Sergeant Johnson testified that on September 16, 2009, he was on patrol in an undercover capacity when he observed Daniel's vehicle. Sergeant Johnson explained that although he had personal knowledge the vehicle belonged to Daniel, he could not see the driver or confirm that Daniel was driving the vehicle. Based on previous experience, Sergeant Johnson requested the Bandera Sheriff's Office dispatcher conduct a search on the vehicle's license plate. The dispatcher informed Sergeant Johnson "there was no insurance coverage on the vehicle." The dispatcher also informed Sergeant Johnson that Daniel's driver's license was suspended. Because Sergeant Johnson was traveling in an unmarked vehicle, he contacted Deputy Nowlin and requested Deputy Nowlin initiate a traffic stop of the vehicle. Sergeant Johnson was present when the traffic stop was initiated and ultimately assisted in Daniel's arrest.

During cross-examination, Sergeant Johnson confirmed his request for Deputy Nowlin to initiate the traffic stop was based on the dispatch information that the vehicle in question lacked insurance coverage. Sergeant Johnson did not see Daniel commit any other traffic offense.

Deputy Nowlin testified that Sergeant Johnson requested, via radio, that he initiate the traffic stop of Daniel's vehicle. Sergeant Johnson advised that he was following a vehicle, but because Sergeant Johnson was in an unmarked vehicle, he requested that Deputy Nowlin initiate the traffic stop. Sergeant Johnson told Deputy Nowlin the basis for the traffic stop was Sergeant Johnson's understanding that "the vehicle had no insurance coverage and that the driver possibl[y] had a suspended driver's license."

Deputy Nowlin testified that he initiated the stop and then approached the driver, later identified as Daniel. He explained to Daniel that he was stopped for no insurance. Daniel confirmed that he did not have insurance and subsequently produced an expired driver's license. Deputy Nowlin testified that he initiated the stop based solely on Sergeant Johnson's request. He

did not confirm the lack of insurance with the Bandera County Sheriff's Office or observe Daniel engage in any traffic violation.

After finding reasonable suspicion existed to support the warrantless arrest, the trial court denied Daniel's motion to suppress.

### 2.  *Second Motion to Suppress*

Subsequent to the first motion to suppress hearing, the Amarillo Court of Appeals released two opinions questioning the reliability of the information provided by the Financial Responsibility Verification Program, a service used by sheriffs' offices to confirm insurance coverage on vehicles:  *Contraras v. State*, 309 S.W.3d 168 (Tex. App.—Amarillo 2010, pet. ref'd) and *Gonzalez-Gilando v. State*, 306 S.W.3d 893 (Tex. App.—Amarillo 2010, pet. ref'd).

After these opinions issued, defense counsel filed a second motion to suppress arguing that an officer relying on a dispatch return of "unconfirmed insurance" coverage is not sufficient to support a *Terry* stop.  *Terry*, 392 U.S. at 22.  Counsel requested the trial court follow the reasoning set forth in the Amarillo cases and make a finding that the information provided to the Bandera Sheriff's Office Dispatch did not rise to the level of reasonable suspicion required by *Terry*. *Contraras*, 309 S.W.3d at 170; *Gonzalez-Gilando*, 306 S.W.3d at 894.

The State stipulated that the Bandera County Sheriff's Office used the Financial Responsibility Verification Program; and, after further investigation, the information available to the dispatcher on the night in question was that the vehicle's insurance status was "insurance unconfirmed."  The State further stipulated:

> Court:  By way of stipulation, I'm understanding y'all both confirm and stipulate that Jerald Johnson's testimony was as you just stated it was, is that he did not know that Mr. Daniel was the driver, that the sole reason for his stop was that he called in his license plate and all they could tell him, that insurance was unconfirmed, and based upon that, he pulled him over?

| | |
|---|---|
| State: | Correct. |
| Defense Counsel: | He actually instructed another deputy to pull him over |

. . . .

| | |
|---|---|
| Court: | If y'all stipulate to it -- |
| Defense Counsel: | Yeah, we will. |
| State: | Yes. |
| Court: | So is that, in effect -- |
| State: | Yes. |
| Court: | -- is the sole reason for that, who was driving the car, he was pulling him over solely on the basis of the license plate call-in and the response of unconfirmed insurance? |
| State: | Correct. |
| Court: | So, basically, it could have been that he did have insurance or it could have been that he didn't have insurance. They couldn't confirm one way or the other. |
| Defense | Counsel: That's right. |
| State: | Correct, Your Honor. And the State's position is that is sufficient for a *Terry* stop now, but the Amarillo Courts hold differently. |
| Defense Counsel: | Yeah. |
| Court: Okay. | Well, if it's confirmed he didn't, that's different, but if it says "unconfirmed," how could that form the basis of articulable facts and reasonable suspicion? |
| State: | The State's position is, Your Honor, without them being able to say that, yes, that vehicle does have insurance, since all vehicles must have insurance, that's sufficient specific articulable facts to support that an offense has been committed sufficient to support a *Terry* stop. That's -- |
| Court: | Well, would you agree -- |
| State: | -- solely the State's position. |
| Court: | -- that this Amarillo Court opinion pretty much rules to the contrary? |
| Court: | -- that this Amarillo Court opinion pretty much rules to the contrary? |
| State: | Yes, the Amarillo Court rejects that argument. Yes, it does. |
| Court: | Okay. Well, I'll grant the motion to suppress. |

**E.     Analysis**

Section 601.051 of the Texas Transportation Code provides that "[a] person may not operate a motor vehicle in this state unless financial responsibility is established for that vehicle."

TEX. TRANSP. CODE ANN. § 601.051 (West 2011); *see Thrower v. State*, No. 2-03-121-CR, 2003 WL 22922988, at *4 (Tex. App.—Fort Worth Dec. 11, 2003, no pet.) (not designated for publication); *Francis v. State*, No. 05-99-01627-CR, 2000 WL 862813, at *2 (Tex. App.—Dallas June 29, 2000, no pet.) (not designated for publication). Both officers testified at the first motion to suppress hearing that they believed the vehicle in question was not covered by valid vehicle liability insurance.

Although Sergeant Johnson testified the information he received from the dispatcher was that "there was no insurance coverage on the vehicle," the trial court was bound by the State's stipulations during the second motion to suppress—that Sergeant Johnson's suspicion was based on a dispatch "response of unconfirmed insurance." *See Gonzalez-Gilando*, 306 S.W.3d at 894 (officer relying on "information regarding insurance was unavailable"); *Contraras v. State*, 309 S.W.3d 168, 170 (Tex. App.—Amarillo 2010, pet. ref'd) (officer relying on "insurance information was unavailable").

*In this case*, the State's factual stipulations controlled. *Gonzalez-Gilando*, 306 S.W.3d at 894; *Contraras*, 309 S.W.3d at 170. Therefore, the trial court's determination that the officers lacked reasonable suspicion was not in error.

CONCLUSION

Based on the State's stipulations, we conclude the record does not support the officer possessed sufficiently detailed and reliable evidence to support reasonable suspicion that the vehicle being driven by Daniel was being operated in violation of section 601.051 of the Texas Transportation Code. TEX. TRANSP. CODE ANN. § 601.051. The trial court, therefore, did not

abuse its discretion in granting the motion to suppress. Accordingly, we affirm the trial court's order granting Daniel's motion to suppress.

Patricia O. Alvarez, Justice

PUBLISH