**Opinion issued November 19, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

## NO. 01-15-00140-CR

———————————

**BRAYAN JOSUE OLIVA-ARITA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law #1**
**Galveston County, Texas**
**Trial Court Case No. MD-0342858**

---

## MEMORANDUM OPINION

After the trial court denied his motion to suppress, appellant Brayan Josue

Oliva-Arita pleaded nolo contendere to the offense of driving while intoxicated.

The trial court assessed appellant's punishment at three days in the county jail and

a $500 fine. In two points of error, appellant contends that the trial court erred in denying his motion to suppress. We affirm.

## Background

Following an initial traffic stop, appellant was arrested and charged with the offense of driving while intoxicated.[1] Appellant filed a motion to suppress and the trial court held an evidentiary hearing.

At the hearing, the State presented Officer Jose Lobo with the Friendswood Police Department.[2] Officer Lobo testified that, while on patrol on the evening of February 16, 2014, he noticed a silver two-door Honda with blue LED lights on its side. He ran a computer check on the vehicle's license plate number and received information that the vehicle's insurance was "unconfirmed."

Officer Lobo testified that, when he runs a license plate check, he receives information regarding the registered owner and the vehicle. He also receives information as to whether the vehicle's insurance is "confirmed" or "unconfirmed," the insured's policy number, the insurance provider, the policy start and expiration dates, and whether the policy has been expired more than

---

[1] *See* TEX. PENAL CODE ANN. § 49.04 (West 2011).

[2] At the time of the suppression hearing, Officer Lobo had been employed as an officer with the department for five years.

2

forty-five days.[3]  Officer Lobo testified that "confirmed" typically means that the vehicle is insured and that "unconfirmed" typically means that the vehicle is uninsured.  He stated that he has used the insurance database "a lot . . . for almost every traffic stop," and that, in his experience, the information that he receives from the computer database is reliable.

After he received information that the Honda's insurance was "unconfirmed," Officer Lobo initiated a traffic stop.  Appellant, the driver of the vehicle, told Officer Lobo that he did not have a driver's license and that the vehicle was not insured.  While speaking with appellant, Officer Lobo detected an odor of alcohol emanating from the vehicle and noticed that appellant's eyes were red, watery, and glazed.  Following an investigation, appellant was arrested for driving while intoxicated.

On cross-examination, Officer Lobo stated that he did not know which State agency administers the computer database, the reason the database was established, when an insurance company provides information for the database after insurance has been obtained, whether the database's insurance information was up-to-date on the date of the traffic stop, or alternative methods for purchasing insurance.

---

[3]    It is a violation of the law to drive a motor vehicle with insurance that has lapsed more than forty-five days earlier.  *See Crawford v. State*, 355 S.W.3d 193, 195 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

Officer Lobo testified that he has occasionally stopped vehicles whose insurance showed "unconfirmed' but which were actually insured. He further stated that approximately seventy-five percent of the vehicles he has stopped with "unconfirmed" insurance have no insurance.

After the trial court denied his motion to suppress, appellant pleaded nolo contendere to the offense of driving while intoxicated. This appeal followed.

## Discussion

In two points of error, appellant contends that the trial court abused its discretion in denying his motion to suppress. First, he argues that the State failed to prove that the computer database that provides information regarding a vehicle's insurance is reliable. Second, he asserts that the information of "unconfirmed" insurance, alone, was insufficient to establish reasonable suspicion for the initial stop.

### A. Standard of Review and Applicable Law

When reviewing a trial court's ruling on a motion to suppress, we apply an abuse of discretion standard; we overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We use a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that turn on the credibility of a witness, and applying a de novo

4

standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Id.* at 922–23. The reviewing court views the evidence in the light most favorable to the trial court's ruling. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).

An investigative detention requires a police officer to have reasonable suspicion of criminal activity. *See Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). The reasonableness of a temporary detention is determined from the totality of the circumstances. *Id.* at 38. If an officer has a reasonable basis for suspecting a person has committed a traffic offense, then the officer legally may initiate a traffic stop. *Miller v. State*, 418 S.W.3d 692, 696 (Tex. App.—Houston [14th Dist.] 2013, pet. ref d). Reasonable suspicion is present if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer reasonably to conclude that a person actually is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The State bears the burden to show that an officer had at least a reasonable suspicion the defendant either had committed an offense, or was about to do so, before they made the warrantless stop. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citation omitted).

Under Texas law, drivers are required to maintain proof of financial responsibility in order to lawfully drive on the public road. *See* TEX. TRANSP.

5

CODE ANN. § 601.051 (West 2011). It is a misdemeanor offense to operate a motor vehicle that is not covered by valid motor vehicle liability insurance or some other means of establishing "financial responsibility." *Id*. § 601.191.

## B. Analysis

In his first point of error, appellant contends that the trial court erred in denying his motion to suppress the initial traffic stop because there is no proof of the reliability of the database that provides information about a vehicle's insurance coverage.[4] In support of his position, appellant relies on the Amarillo Court of Appeals's holdings in *Gonzalez-Gilando v. State*, 306 S.W.3d 893 (Tex. App.— Amarillo 2010, pet. ref'd) and *Contraras v. State*, 309 S.W.3d 168 (Tex. App.— Amarillo 2010, pet. ref'd).

The facts in *Contraras* and *Gonzalez-Gilando* are essentially the same as they involve appeals by a driver and his passenger, respectively, from the trial court's denial of their motions to suppress evidence discovered during the course of an initial traffic stop. In those cases, two Department of Public Safety troopers

---

[4] In an effort to reduce the number of uninsured motorists in Texas, the Legislature directed the creation of a program for the verification of vehicle owners' compliance with financial responsibility laws. TEX. TRANSP. CODE ANN. § 601.452 (West Supp. 2009). In accordance with the directive, the implementing agencies adopted regulations to implement the Financial Responsibility Verification Program. *See* 28 TEX. ADMIN. CODE §§ 5.601–5.611 (West 2006) (regulations of the Texas Department of Insurance). The regulations require insurance companies to submit data on personal auto insurance policies in force in Texas to a database weekly, or to make the data available via an approved web-based system. *Id.* §§ 5.604, 5.606 (West 2006 & Supp. 2014).

were on patrol on a highway known as a main route for drug trafficking when they observed a vehicle pass them in the opposite direction and decided to turn and follow it. *See Contraras*, 309 S.W.3d at 169; *Gonzalez-Gilando*, 306 S.W.3d at 895. When the troopers checked their in-vehicle computers, the database gave them information that the vehicle's registration was current but that the insurance information was "unavailable."[5] Based on this information, the vehicle was stopped, resulting in the discovery of the controlled substances underlying the defendants' convictions. *See Contraras*, 309 S.W.3d at 170; *Gonzalez-Gilando*, 306 S.W.3d at 895. Defendants subsequently filed motions to suppress which the trial court denied. *See Contraras*, 309 S.W.3d at 169; *Gonzalez-Gilando*, 306 S.W.3d at 894.

On appeal, the court rejected the State's contention that the officers had reasonable suspicion that the driver, Gonzalez-Galindo, was driving without insurance. *See Gonzalez-Gilando*, 306 S.W.3d at 896–97; *Contraras*, 309 S.W.3d at 172. Although noting that modern technology has given police officers the means to assess a driver's compliance with the requirement that he maintain proof of financial responsibility, the *Gonzalez-Galindo* court stated that the information

---

[5]  A deputy sheriff asked to assist the troopers received similar information that the vehicle's insurance was "not available" or its status was "undocumented." *See Contraras v. State*, 309 S.W.3d 168, 171 n.2 (Tex. App.—Amarillo 2010, pet. ref'd); *Gonzalez-Gilando v. State*, 306 S.W.3d 893, 895 (Tex. App.—Amarillo 2010, pet. ref'd).

obtained by the officers "was hardly suggestive of anything other than the unknown." *Gonzalez-Gilando*, 306 S.W.3d at 896. In particular, the court noted that, although the officer initiating the traffic stop stated that the "unavailable" status led him to believe that the vehicle was uninsured,[6]

> without other evidence developing the source of the information comprising the database, explaining what was meant when insurance information was unavailable, explaining why such information would be unavailable, illustrating the accuracy of the database, establishing the timeliness of the information within the database, depicting how often those using the database were told that insurance information was unavailable, proving that the program through which the database was accessed was even operating at the time, and the like, we cannot accept the deputy's inference as reasonable.

*Id.* at 897. Similarly, the *Contraras* court stated that the terms "unavailable" and "undocumented" were not self-explanatory and that, with "no explanation of their meaning, we are unwilling to speculate on them." *Contraras*, 309 S.W.3d at 172–73.

*Gonzalez-Galindo* and *Contraras* are factually distinguishable from the case before us. Here, Officer Lobo testified that he uses the computer database "a lot . . . on almost every stop." He stated that information from the database that insurance is "unconfirmed" typically means that the vehicle is not insured whereas "confirmed" typically means the vehicle is insured. When asked why a vehicle's

---

[6] However, one of the two DPS troopers who initially spotted the vehicle testified that information that insurance was "unavailable" meant that the car might or might not be covered.

8

insurance would be "unconfirmed," Officer Lobo testified that it could mean that the vehicle has no insurance. He testified that the majority of stops he has initiated of vehicles whose insurance is shown as "unconfirmed" have no insurance. When asked to quantify this number, he estimated the number at seventy-five percent. Officer Lobo further testified that, based on his experience, the information received from the computer database is reliable. Officer Lobo's testimony provided the trial court with an explanation of the meaning of the terms "confirmed" and "unconfirmed," why such information might be "unconfirmed," and the accuracy and reliability of the database based on his experience.

Appellant also argues that the trial court erred in denying his motion to suppress because the database information of "unconfirmed" insurance, alone, failed to provide specific, articulable facts to support a finding of reasonable suspicion to warrant the initial stop. In support of his position, appellant relies on this Court's decision in *Crawford v. State*, 355 S.W.3d 193 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

In *Crawford*, the defendant was convicted of evading arrest or detention in a vehicle with a prior conviction for the same offense. *See id.* at 195. On appeal, he argued that no evidence supported the trial court's finding at the bench trial that the officer had a lawful reason to detain him. *See id.* at 196. In affirming the defendant's conviction, we noted that when the officer checked the license plate

number of the defendant's vehicle, the information showed that the insurance policy had lapsed more than a month earlier. *See id.* at 197.

Relying on *Crawford*, appellant reasons that because the only information Officer Lobo received was that appellant's insurance was "unconfirmed," with no accompanying information, it was insufficient to support reasonable suspicion. Appellant's argument is unavailing. *Crawford* neither states nor implies that information that insurance is "unconfirmed" is insufficient to support reasonable suspicion. Moreover, the State developed evidence demonstrating that Officer Lobo's belief was reasonable. Specifically, Officer Lobo testified what it typically meant when insurance was "unconfirmed," why such information might be unconfirmed, the accuracy of the information based on the stops of vehicles with "unconfirmed" insurance that he has conducted, and that, based on his experience, the information from the computer database is reliable. *See id.* (noting absence of such evidence in *Gonzalez-Gilando* and *Contraras*).

Appellant also relies on *State v. Daniel*, 446 S.W.3d 809 (Tex. App.—San Antonio 2014, no pet.), in which the court of appeals found that the officer lacked reasonable suspicion that the defendant's vehicle was being operated without insurance to justify the warrantless stop. *Id.* at 815. In *Daniel*, the State stipulated at the suppression hearing that the sole reason for the officer's suspicion was based on the response from dispatch of "unconfirmed insurance." In in response to the

trial court's question whether the information of "unconfirmed insurance" meant that "it could have been that [the defendant] did have insurance or it could have been that he didn't," the State answered "correct." The State offered no other evidence to support a finding that the officer had reasonable suspicion to effect the traffic stop. Thus, *Daniel* is also factually distinguishable from this case because, as discussed above, the State developed evidence demonstrating that Officer Lobo had specific, articulable facts upon which he could reasonably conclude that appellant's vehicle was not insured.

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress. We overrule appellant's first and second points of error.

**Conclusion**

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).