

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00705-CR

Sara Joyce Ellen **BUENDIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 15-0446-CR-A
Honorable W.C. Kirkendall, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Karen Angelini, Justice
               Marialyn Barnard, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  July 26, 2017

AFFIRMED

Appellant Sara Joyce Ellen Buendia pled guilty to one count of manufacture or delivery of

four or more grams but less than 200 grams of a controlled substance in penalty group one.  On

appeal, Buendia contends the trial court erred in denying her motion to suppress evidence obtained

during a traffic stop, arguing the police officer who initiated the stop lacked reasonable suspicion.

We affirm the trial court's judgment.

**BACKGROUND**

Guadalupe County Sheriff Deputy Eric Roseland stopped Buendia after he saw her fail to stop at a designated stop line and drive on the shoulder of the roadway. Based on his observations during the traffic stop and Buendia's criminal history of possession of controlled substances, the deputy called a canine unit to the scene. After a positive alert by the canine, Deputy Roseland searched the vehicle and found methamphetamine. He arrested Buendia. Buendia filed a motion to suppress the evidence discovered during the search, alleging Deputy Roseland did not have reasonable suspicion to initiate the traffic stop.

At the hearing on the motion to suppress, the State presented testimony from Deputy Roseland, who testified that while on patrol, he was driving eastbound on F.M. 467 when he saw Buendia commit two traffic violations — failing to stop at a designated stop line and driving on an unimproved shoulder. Deputy Roseland testified that with regard to the first traffic violation, Buendia was driving on Sweet Home Road when she stopped at the intersection of Sweet Home Road and F.M. 467. Deputy Roseland testified as he passed the vehicle, he saw Buendia was stopped "just past the line" at a stop sign. Deputy Roseland stated as he drove, he continued to observe Buendia's vehicle in his rearview mirror. According to Deputy Roseland, he noticed Buendia stayed at the location for "a good amount of time" despite the fact there were no other vehicles on the road. As a result, he circled back around to Sweet Home Road and followed Buendia, who by that time was driving eastbound on F.M. 467.

Deputy Roseland testified that around this time, he activated his dash camera. Deputy Roseland further stated Buendia was neither speeding nor weaving in and out of lanes while driving, but at one point, she drove off the roadway onto the unimproved shoulder. Deputy Roseland testified that after he saw Buendia drive onto the unimproved shoulder, he believed she committed a second traffic violation. He then initiated a traffic stop.

- 2 -

Deputy Roseland testified Buendia was the driver of the vehicle and the only occupant. When asked to describe Buendia's demeanor, he stated she "appeared to be nervous" and was "speaking very fast." He also stated he "noticed her artery on her side of her neck was enlarged." Deputy Roseland testified that during the traffic stop, he conducted a visual search of the interior of the vehicle and saw several small plastic bags in the door pocket. According to Deputy Roseland, Buendia stated she used the small plastic bags for jewelry making; however, based on his training and experience, he suspected the small plastic bags may have been used for narcotics use or sale. Deputy Roseland ran a criminal history check on Buendia and discovered she had two prior arrests for felony possession of controlled substances. He asked Buendia whether she was carrying anything illegal in the vehicle, and Buendia stated she was not the only person who drove the car, and someone else might have "left something else inside the car" and "it would probably be meth."

At that point, Deputy Roseland asked Buendia for permission to search the vehicle, but Buendia refused. Deputy Roseland testified he then called the Guadalupe County Sheriff's Office and requested the assistance of a canine unit. Officer Josh Kennington then arrived with his canine partner, Simon, who gave a positive alert to the driver's side door as well as the small plastic bags, which at that time had been placed on the trunk of the vehicle. Deputy Roseland then searched the vehicle and found 38 grams of methamphetamine. Buendia was subsequently arrested for possession of a controlled substance.

During cross-examination, defense counsel asked Deputy Roseland questions regarding the existence of a marked stop line and whether Buendia was required to stop at the designated line. According to Deputy Roseland, he believed there was a "clearly designated white line at that stop sign" and Buendia had stopped "just past the line." When asked whether he had any pictures of the intersection or whether his dash camera video captured Buendia's vehicle at the stop sign,

Deputy Roseland testified he did not have any pictures nor was his dash camera video activated at that point. Defense counsel also asked Deputy Roseland questions regarding whether Buendia committed a traffic violation by driving on an unimproved shoulder before making a right-hand turn. Deputy Roseland testified he believed Texas law allowed a person to drive on the shoulder before making a *left*-hand turn as opposed to a *right*-hand turn. However, after reviewing the statute, he admitted a person was permitted to drive on the shoulder and decelerate if that person was going to make a right-hand turn or was trying to let another person pass. Deputy Roseland also stated that prior to the stop, he saw Buendia drive on the unimproved shoulder and then make a right-hand turn. Deputy Roseland further testified when he asked Buendia about driving on the shoulder, she stated she was trying to let him pass and was in the process of making a right-hand turn to her home. When asked whether he stopped Buendia for driving on the shoulder, Deputy Roseland testified he believed Buendia committed a violation when she drove on the shoulder, but insisted "the main reason for initiating the stop was due to failing to stop at a designated point." Deputy Roseland further explained he did not immediately pull Buendia over when she committed the first violation because he wanted to run a search of her license plate.

The trial court took the matter under advisement to review the dash camera video. A review of the video shows Buendia's vehicle driving down F.M. 467 and moving onto the right shoulder of the roadway after which she makes a right turn into a mobile home park. Buendia stops inside the entrance of the mobile home park and Deputy Roseland approaches her. Deputy Roseland informs Buendia that he stopped her because she was driving on the shoulder. Buendia responds, explaining she was turning into the mobile home park because she lived there. Deputy Roseland informs Buendia she is not permitted to drive on the shoulder of the roadway and asks for her driver's license. Buendia states she does not have a driver's license, but provides the deputy with her name. The video continues, corroborating the remainder of Deputy Roseland's testimony. At

no point during the video does Deputy Roseland inform Buendia that she failed to stop at the stop line at the intersection of Sweet Home Road and F.M. 467.

The trial court held a second hearing on the motion to suppress. At the second hearing, the State informed the trial court that defense counsel had contacted the State, advising there was no white stop line at the intersection of Sweet Home Road and F.M. 467. To support this statement, defense counsel introduced photographs taken by Buendia that currently depicted the intersection. The trial court then heard additional testimony from Deputy Roseland regarding the existence of the stop line. Deputy Roseland testified that after the first suppression hearing, he saw construction workers resurfacing the intersection. According to Deputy Roseland, there was a clearly marked white stop line at the intersection on the evening he pulled Buendia over. The State also produced Google Earth images, depicting how the intersection looked two months before the traffic stop occurred. The images depict a white line at the intersection.

After considering the evidence, the trial court denied Buendia's motion to suppress and entered findings of fact and conclusions of law. In its findings of fact, the trial court expressly found Deputy Roseland stopped Buendia "for the offense of failure to stop at a designated point." The trial court further found "[t]he defendant did not commit the offense of driving on an unimproved shoulder" and "[t]he officer had reasonable suspicion to stop the defendant." Thereafter, Buendia pled guilty and was sentenced to fifteen years' confinement. Buendia now appeals the trial court's ruling on her motion to suppress.

**ANALYSIS**

In her sole issue on appeal, Buendia argues the trial court erred in denying her motion to suppress because there is no evidence Deputy Roseland had reasonable suspicion to initiate a traffic stop. In support of her position, Buendia argues the dash camera video contradicts the deputy's testimony because it does not show she failed to stop at a designated point nor does it

show Deputy Roseland inform Buendia that the basis of the traffic stop was for failing to stop at a designated point.  Rather, the video shows Buendia drive onto the shoulder of the roadway and make a right turn.  The video also depicts Deputy Roseland informing Buendia that the reason she was being stopped was because she drove on the shoulder of the roadway.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *State v. Daniel*, 446 S.W.3d 809, 812 (Tex. App.—San Antonio 2014, no pet.); *Castro v. State*, 373 S.W.3d 159, 163-64 (Tex. App.—San Antonio 2012, no pet.).  We review the trial court's conclusions of law de novo and uphold the trial court's ruling if it is supported by the record and falls under any correct legal theory applicable to the case.  *Castro*, 373 S.W.3d at 164 (citing *State v. Iduarte,* 268 S.W.3d 544, 549 (Tex. Crim. App. 2008); *Beechum v. State*, 346 S.W.3d 5, 8 (Tex. App.—San Antonio 2011, no pet.)).  On the other hand, under this bifurcated standard, we do not engage in our own factual review.  *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  "The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).  We therefore afford almost total deference to the trial court's determinations on questions of historical fact and facts which depend on witness credibility and demeanor.  *Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Castro*, 373 S.W.3d at 163-64.  "When, as in the case before us, the trial court enters findings of fact after denying a motion to suppress, we must determine whether the evidence supports those facts by viewing the evidence in favor of the trial court's ruling." *Castro*, 373 S.W.3d at 164 (citing *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009)).

*Applicable Law – Reasonable Suspicion*

"An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2016). "Reasonable suspicion exists if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Id*. (quoting *Abney v. State*, 394 S.W.3d 547, 548 (Tex. Crim. App. 2013)). It "is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Ford*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *see Daniel*, 446 S.W.3d at 812; *Castro*, 373 S.W.3d at 164. It is not necessary for an officer to pinpoint a specific crime when detaining someone for reasonable suspicion of criminal activity. *Derichsweiler*, 348 S.W.3d 906, 916–17 (Tex. Crim. App. 2011) ("[I]t is enough that the totality of the circumstances, viewed objectively and in the aggregate, suggests the realistic possibility of a criminal motive, however amorphous, that was about to be acted upon."). Rather, in making our determination regarding whether reasonable suspicion exists, we consider the totality of the circumstances. *Daniel*, 446 S.W.3d at 812; *Castro*, 373 S.W.3d at 164.

This court has recognized "[i]t is well settled that a traffic violation committed in an officer's presence authorizes an initial stop." *Daniel*, 446 S.W.3d at 813. The State does not have to establish that a traffic offense was actually committed, but only that an officer reasonably believed a violation was in progress." *Id*; *see also State v. Torrez*, 490 S.W.3d 279, 284 (Tex. App.—Fort Worth 2016, pet. ref'd). ("[A]t a suppression hearing, the State need not establish that a crime occurred prior to the investigatory stop but must elicit testimony showing sufficient facts to prove that reasonable suspicion existed that a particular person was engaged in criminal activity."). Relevant to this case, section 544.007(d) of the Texas Transportation Code states a

driver facing only a steady red signal shall stop at a "clearly marked stop line." TEX. TRANSP. CODE ANN. § 544.007(d) (West 2011).

### *Application*

During the hearing on the motion to suppress, the trial court heard testimony from Deputy Roseland, who provided specific articulable facts showing he stopped Buendia because she failed to stop at a clearly marked stop line, which is a traffic violation under the Transportation Code. *See id.*; *Jaganathan*, 479 S.W.3d at 247; *Daniel*, 446 S.W.3d at 812. Deputy Roseland testified "the main reason for initiating the stop was due to failing to stop at a designated point." Deputy Roseland also testified he personally observed Buendia stop "just past the line." Moreover, the trial court reviewed Google Earth images, which depicted that a clearly marked white stop line existed at the intersection two months prior to the traffic stop at issue. In addition to the images, the trial court heard testimony from Deputy Roseland at the second suppression hearing in which he testified a clearly marked lined existed at the time he stopped Buendia. After considering this evidence, we conclude there was evidence to support the trial court's express finding that Deputy Roseland stopped Buendia "for the offense of failure to stop at a designated point." *See Castro*, 373 S.W.3d at 164.

Buendia argues there is no evidence to support the finding that she failed to stop at a designated point because the dash camera video does not show whether the violation occurred. We disagree. The trial court heard testimony from Deputy Roseland that he personally observed the violation and he did not activate his dash camera video until after Buendia committed the traffic violation. As the sole trier of fact and judge of credibility, the trial court was free to believe Deputy Roseland's testimony. *See Valtierra*, 310 S.W.3d at 447. Therefore, when viewing the evidence in the light most favorable to the trial court's ruling, we conclude the trial court did not err in

entering a finding Deputy Roseland stopped Buendia because she failed to stop at a designated stop line. *See Castro*, 373 S.W.3d at 164.

Buendia, however, highlights there is no evidence Deputy Roseland advised her that she failed to stop at the marked stop line. Buendia points out the evidence shows only that the deputy told her she was being stopped because she was driving on the shoulder, which is not a traffic violation. However, under Texas law, Deputy Roseland was not required to pinpoint a specific crime when he detained Buendia based on reasonable suspicion. *See Derichsweiler*, 348 S.W.3d at 916–17. Rather, the State only had to establish Deputy Roseland reasonably believed a violation was in progress. *See Daniel*, 446 S.W.3d at 813. Here, Deputy Roseland testified he believed Buendia committed a violation when she drove on the shoulder; he further added that "the main reason for initiating the stop was due to failing to stop at a designated point." Moreover, our standard requires us to disregard Deputy Roseland's subjective intent in making the stop. *See Ford*, 158 S.W.3d at 492; *Daniel*, 446 S.W.3d at 812; *Castro*, 373 S.W.3d at 164. As long as there are specific, articulable facts that would reasonably lead a person to believe a traffic violation occurred when such facts are viewed objectively under the totality of the circumstances, reasonable suspicion exists. *Jaganathan*, 479 S.W.3d at 247; *Ford*, 158 S.W.3d at 492; *see Daniel*, 446 S.W.3d at 812; *Castro*, 373 S.W.3d at 164. Here, there is testimonial evidence the deputy stopped Buendia because she failed to stop at a designated point, which is a traffic violation. Accordingly, after deferring to the trial court's findings of fact and considering the totality of the circumstances, we conclude the trial court did not err in concluding Deputy Roseland had reasonable suspicion to stop Buendia.[1] *See Jaganathan*, 479 S.W.3d at 247; *Ford*, 158 S.W.3d at 492.

---

[1] We note that in her brief, Buendia asks this court to review *Valentine v. State*, No. 04-16-00397-CR, 2017 WL 1902055, at *1 (Tex. App.—San Antonio May 10, 2017, no pet. h.) (mem. op., not designated for publication) and *Haines v. State*, No. 04-16-00410-CR, 2017 WL 1684808, at *1 (Tex. App.—San Antonio Apr. 26, 2017, no pet. h.) (mem. op., not designated for publication), two cases that issued after Buendia filed her brief. After review, we

## CONCLUSION

Based on the foregoing, we hold the trial court did not err in denying Buendia's motion to suppress. We therefore affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish

---

conclude *Valentine* is distinguishable because it concerns the reasonableness of the *duration* of a traffic stop. *See* 2017 WL 1902055, at \*2. At no point does Buendia argue the duration of the traffic stop was unreasonable. The crux of Buendia's complaint rests solely on whether Deputy Roseland had reasonable suspicion to initiate a traffic stop. With regard to *Haines*, in that case we held that despite the fact the video recording did not depict whether the defendant had committed a traffic violation by failing to stop, the officer had reasonable suspicion to initiate a traffic stop because he testified he personally observed the violation. 2017 WL 1684808, at \*2. Accordingly, our holding in this case is consistent with our holding in *Haines*. *See id.*