

# IN THE
# TENTH COURT OF APPEALS

### No. 10-18-00051-CR

**GLEN LAMAR MORNING,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 361st District Court
Brazos County, Texas
Trial Court No. 16-05123-CRF-361**

## MEMORANDUM OPINION

In one issue, appellant, Glen Lamar Morning, argues that the trial court erred in denying his motion to suppress evidence. Specifically, Morning contends that reasonable suspicion did not exist for the traffic stop based on an "unconfirmed" insurance status return. We affirm.

# I. STANDARD OF REVIEW

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); *see Moran v. State*, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

When ruling on a motion to suppress, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). When reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the ruling. *Garcia-Cantu v. State*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

## II. APPLICABLE LAW

In a hearing on a motion to suppress based on an alleged Fourth Amendment violation, the initial burden of producing evidence that rebuts the presumption of proper police conduct is on the defendant. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *see State v. Dietiker*, 345 S.W.3d 422, 424 (Tex. App.—Waco 2011, no pet.). The defendant's burden may be satisfied by establishing that a search or seizure occurred without a warrant. *Ford*, 158 S.W.3d at 492; *see Dietiker*, 345 S.W.3d at 424. After this showing is made by the defendant, the State assumes the burden of demonstrating that the search or seizure was conducted pursuant to a warrant or was reasonable. *Ford*, 158 S.W.3d at 492; *see Dietiker*, 345 S.W.3d at 424. Here, the record indicates that the stop was made without a warrant; thus, the State assumed the burden of proof regarding whether reasonable suspicion for the detention existed. *See Ford*, 158 S.W.3d at 492.

The Fourth Amendment to the United States Constitution provides, in part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. As a general rule, searches conducted without a warrant are deemed unreasonable unless the situation presents an exception to the warrant requirement. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). One such exception is the *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 29, 88 S. Ct. 1868, 1884, 20 L. Ed. 889 (1968). Consistent with *Terry*, a police officer may stop and briefly detain a person for investigative purposes if the officer has

reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of "probable cause." 392 U.S. at 29, 88 S. Ct. at 1884; *see Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

A determination of reasonable suspicion is made by considering the totality of the circumstances. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). In *Foster v. State*, the Court of Criminal Appeals repeated the standard for warrantless traffic stops:

> A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. In order to stop and briefly detain an individual, an officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. Specifically, the police officer must have some minimal level of objective justification for making the stop, i.e., when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances.

326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (internal quotations omitted); *see Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (noting that reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged in or is, or soon will be, engaging in illegal conduct).

### III.   ANALYSIS

On appeal, Morning asserts that the "ambiguous return of an insurance verification program alone is insufficient to establish reasonable suspicion to justify a traffic stop." Morning further argues that "[f]or a stop to be based on the ambiguous

return, the officer making the stop will have to have indications of accuracy and reliability from the database that produced the information."

"A person may not operate a motor vehicle in this state unless financial responsibility is established for that vehicle . . . ."  *See* TEX. TRANSP. CODE ANN. § 601.051 (West 2011).  Moreover, operating a vehicle for which financial responsibility has not been established is a misdemeanor punished by a fine.  *See id.* § 601.191 (West Supp. 2018). Cases involving stops based on an officer's database-derived suspicion that the driver may be committing this misdemeanor fall into two categories:

> In the first category . . . the courts have held an officer did not have reasonable suspicion where the evidence was not developed to determine the ambiguous answer's meaning or reliability.  In the second category . . . courts have held that reasonable suspicion existed when the officer, through experience or training, had additional information about what the ambiguous answer from the database meant and some idea regarding the data's reliability.

*Ellis v. State*, 535 S.W.3d 209, 214 (Tex. App.—Fort Worth 2017, pet. ref'd) (quoting *Swadley v. State*, No. 02-15-00085-CR, 2016 Tex. App. LEXIS 13308, at **13-14 (Tex. App.— Fort Worth Dec. 15, 2016, pet. ref'd) (mem. op., not designated for publication) (citations omitted)).

In the instant case, Garret Hudson, a patrol officer for the Texas A&M University Police Department, testified that he had been a certified peace officer for three-and-a-half years and that he has a total of seven or eight years of law-enforcement experience. During the early morning hours of September 1, 2016, Officer Hudson observed a vehicle

driven by Morning turning from F and B Road onto Wellborn Road. While driving behind the vehicle driven by Morning, Officer Hudson conducted a license-plate check. Officer Hudson testified that, when conducting a license-plate check, he is "looking for things such as registration status, obviously any TCIC/NCIC hits coming back to a stolen vehicle, and the insurance status." When Officer Hudson conducted the license-plate check on the vehicle driven by Morning, the insurance status came back as "unconfirmed." Based on his training and experience, Officer Hudson noted that an "unconfirmed" return means that the vehicle is not insured.

Officer Hudson later testified that he has regularly conducted license-plate checks during his three-and-a-half years as a peace officer and that it has been his experience that the "unconfirmed" insurance status is "very accurate that insurance is not able to be provided." Officer Hudson also explained that he believes the database to be "[v]ery accurate" and reliable and that he did not have any problems with the database on the night in question.

After receiving the "unconfirmed" status, Officer Hudson stopped the vehicle driven by Morning, believing that he had reasonable suspicion that the vehicle was not insured. At the hearing on Morning's motion to suppress, Officer Hudson acknowledged that he stopped Morning solely because of the "unconfirmed" insurance status. When Officer Hudson made contact, Morning was not able to provide proof of insurance or valid proof of financial responsibility. When Morning provided his name and birthdate,

Officer Hudson discovered that Morning had a suspended driver's license. Morning was subsequently arrested for driving with an invalid license.

On appeal, Morning contends that this case belongs in the category of cases in which courts have held that the police lacked reasonable suspicion based on the word "unconfirmed" and no other information. *See State v. Daniel*, 446 S.W.3d 809, 815-16 (Tex. App.—San Antonio 2014, no pet.); *Contraras v. State*, 309 S.W.3d 168, 173 (Tex. App.—Amarillo 2010, pet. ref'd); *Gonzalez-Gilando v. State*, 306 S.W.3d 893, 896-97 (Tex. App.—Amarillo 2010, pet. ref'd). We disagree.

As noted above, Officer Hudson testified that he has regularly conducted license-plate checks during his three-and-a-half years as a peace officer and that, based on his experience, the database is "very accurate that insurance is not able to be provided." Officer Hudson further stated that he believes the database to be "[v]ery accurate" and reliable; that he did not have any problems with the database on the night in question; and that an "unconfirmed" return means that the vehicle is not insured. We therefore hold that Officer Hudson had sufficient specific, articulable facts upon which to base his inference that the vehicle Morning was driving was uninsured. *See Ellis*, 535 S.W.3d at 216 (citing *Oliva-Arita v. State*, No. 01-15-00140-CR, 2015 Tex. App. LEXIS 11925, at **8-12 (Tex. App.—Houston [1st Dist.] Nov. 19, 2015, no pet.) (mem. op., not designated for publication)); *see also* TEX. TRANSP. CODE ANN. §§ 601.051, .191; *Foster*, 326 S.W.3d at 613; *Castro*, 227 S.W.3d at 741; *Garcia*, 43 S.W.3d at 530.

Nevertheless, Morning asserts that Officer Hudson's testimony alone was insufficient to establish the database's reliability, focusing on all the objective information about the database that Officer Hudson did not know. Specifically, Morning focuses on the absence of testimony from Officer Hudson regarding the law that allowed the database and the specific program that generated the information, as well as Officer Hudson's inability to define one of the terms the database can return—"[v]erify manually." Furthermore, Morning notes that Officer Hudson admitted that he has chosen to "err on the side of caution" instead of relying on the database to ticket some "unconfirmed drivers." In making these arguments, Morning attempts to place his case in the category with *Gonzalez-Gilando*, 306 S.W.3d at 896-97 and *Daniel*, 446 S.W.3d at 815.

In *Gonzalez-Gilando*, the license-plate check conducted by the deputy resulted in the discovery that potential liability insurance was "unavailable," "not available," or the status "undocumented." 306 S.W.3d at 894-95. The deputy testified with no further explanation that the return led him to believe that the vehicle did not have insurance coverage. *Id.* at 896-97. The Amarillo Court noted that another trooper testified that the return could have meant either that the vehicle was insured or that it was not insured. *Id.* at 897 n.2. And in concluding that the deputy lacked reasonable suspicion for the stop, the Amarillo Court stated,

> without other evidence developing the source of the information comprising the database, explaining what was meant when insurance information was unavailable, explaining why such information would be unavailable, illustrating the accuracy of the database, establishing the

timeliness of the information within the database, depicting how often those using the database were told that insurance information was unavailable, proving that the program through which the database was accessed was even operating at the time, and the like, we cannot accept the deputy's inference as reasonable.

*Id.* at 897.

We find *Gonzalez-Gilando* to be factually distinguishable from the case at bar. Here, Officer Hudson testified about the meaning of "unconfirmed" and explained that: (1) he regularly conducted license-plate checks during his three-and-a-half years as a peace officer; (2) it has been his experience that the "unconfirmed" insurance status is "very accurate" and reliable; and (3) he did not have any problems with the database on the night in question. This has been held to be enough to support a finding of reasonable suspicion to support a stop. *See Ellis*, 535 S.W.3d at 216; *see also United States v. Broca-Martinez*, 855 F.3d 675, 680 (5th Cir. 2017) ("A state computer database indication of insurance status may establish reasonable suspicion when the officer is familiar with the database and the system itself is reliable. If that is the case, a seemingly inconclusive report such as 'unconfirmed' will be a specific and articulable fact that supports a traffic stop."). And we are not persuaded by any suggestion that the State was required to proffer evidence in support of all or most of the factors mentioned by the *Gonzalez-Gilando* Court. *See* 306 S.W.3d at 897.

In *Daniel*, the San Antonio Court of Appeals concluded that the officer lacked reasonable suspicion that the defendant's vehicle was being operated without insurance

to justify the warrantless stop.  446 S.W.3d at 815.  The State stipulated at the suppression hearing that the sole reason for the officer's suspicion was based on a response from dispatch of "unconfirmed insurance."  *Id.*  And in response to the trial court's question whether the information of "unconfirmed insurance" meant that "it could have been that [the defendant] did have insurance or it could have been that he didn't," the State answered "[c]orrect."  *Id.*  The State offered no other evidence to support a finding that the officer had reasonable suspicion to effect the traffic stop.

We find *Daniel* to be factually distinguishable from this case because, as discussed above, the State developed evidence demonstrating that Officer Hudson had specific, articulable facts—other than simply the database return of "unconfirmed"—upon which he could reasonably conclude that the vehicle Morning was driving was not insured.

Therefore, viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not abuse its discretion in denying Morning's motion to suppress.  *See Crain*, 315 S.W.3d at 48; *see also Guzman*, 955 S.W.2d at 88-89.  As such, we overrule appellant's sole issue on appeal.

## IV.    CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed October 31, 2018
Do not publish
[CR25]

