**Dustin DUCKETT, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 03–CM–1462.

District of Columbia Court of Appeals.

Argued Oct. 26, 2005.

Decided Nov. 17, 2005.

Charles H. Fitzpatrick, Washington, DC, for appellant.

Alessio D. Evangelista, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and David B. Goodhand and Leah L. Belaire, Assistant United States Attorneys, were on the brief for appellee.

Before SCHWELB and GLICKMAN, Associate Judges, and NEWMAN, Senior Judge.

GLICKMAN, Associate Judge:

Appellant Dustin Duckett moved to suppress marijuana recovered from his jacket and his car following a traffic stop. After an evidentiary hearing, the trial judge denied the motion, rejecting Duckett's claim that the stop violated the Fourth Amendment. The judge thereafter found Duckett guilty of possession with intent to distribute marijuana, in violation of D.C.Code § 48–904.01(a)(1) (2001). We hold that the marijuana should have been suppressed because the traffic stop was not justified by reasonable grounds to suspect Duckett of violating the law.

At the hearing on Duckett's motion, the two main witnesses were Officer Henry Gallagher and Sergeant Evelyn Best, both of the Metropolitan Police Department. Officer Gallagher testified that he was on routine patrol in his scout car when he saw Duckett driving a four-door Ford with standard metal District of Columbia license plates affixed to the vehicle. Although Officer Gallagher had no reason to focus on Duckett's car, he "arbitrarily" entered its license plate number in the mobile computer terminal in his scout car to retrieve information about it from the Washington Area Law Enforcement System ("WALES") and the National Criminal Information Center ("NCIC") databases.[1] No information was forthcoming, however. Instead of displaying vehicle registration data from WALES, the portion of the screen where that information should have appeared was blank. The area of the screen set aside for NCIC data contained only the message, "NO REC-ORD." Officer Gallagher had experience stopping other vehicles after receiving such (non-)responses to his WALES and NCIC checks; ninety percent of the time, he testified, the vehicle turned out to be unregistered (a traffic offense).[2] Accord-

---

1. Officer Gallagher explained that, while on duty, he "constantly" runs tags on passing vehicles through the police computer systems to check for stolen or unregistered vehicles, outstanding warrants, or other information that would justify a traffic stop. "I've gotten," he added, "multiple possession with intent to distributes on traffic stops ... doing that during the tour [of duty]."

2. Actually, it appears that Officer Gallagher did not really know whether the vehicles he stopped were unregistered; he could say only that nine times out of ten, the drivers could not show him proof of registration when he asked them for it. As he explained when he was asked whether he knew the vehicles were unregistered:

> If it's not in the system as registered and he [the driver] cannot display a registration, basically it is considered an unregistered auto. ... If I conduct a stop and it's not—I have no WALES, no record, no nothing, he [the driver] doesn't have a registration in the vehicle, ... and he doesn't even have a bill of sale, for example, especially if he just bought it and I don't have a sticker in the

ingly, Officer Gallagher decided to conduct a traffic stop to investigate. In the course of doing so, he smelled marijuana, which led to Duckett's arrest and the recovery of the contraband from the car and from Duckett's jacket.

As it happens, Duckett's car was not unregistered. Duckett had registered it with the District of Columbia Department of Motor Vehicles ("DMV") five weeks before Officer Gallagher stopped it. The car was bearing the license plate it had been issued. A certified record from the DMV showing the current, valid registration of Duckett's car at the time of the stop was admitted in evidence at the suppression hearing. Had WALES reported this fact in response to Officer Gallagher's inquiry, he would have known that he had no justification to make the traffic stop.[3]

Sergeant Best, who served as the Metropolitan Police Department's NCIC and WALES program manager, explained the functioning of the two systems. The NCIC system, she testified, is a national computerized database that contains information about stolen vehicles and license plates, among other things. The "NO RECORD" response that Officer Gallagher received from NCIC simply meant that neither Duckett's vehicle nor its license plate had been reported stolen; the response did not signify that the vehicle was unregistered. WALES, on the other hand, is a local police database. WALES does contain vehicle registration data, downloaded to it from the DMV and updated on a weekly basis. WALES therefore should have reported the current registration of Duckett's vehicle with the license plate number that Officer Gallagher entered.

That WALES had no information on a properly registered vehicle in this case was not unusual, however; if anything, according to Sergeant Best, this was a rather "frequent" occurrence. Generally speaking, Sergeant Best testified, a blank screen response to a WALES check on a D.C. license tag number means that the number is not in the WALES database for one of two main reasons: either the DMV has not yet updated WALES with the registration information for the vehicle, i.e., the vehicle was registered and issued a license plate after the last weekly update; or a clerical or computer error of some kind has interfered with the DMV's download of the information.[4] In neither case would the lack of a response from WALES signify that the license plate number is invalid or that the vehicle is unregistered. Only one other possible cause of a blank screen response from WALES was identified at the suppression hearing: the possibility that the D.C. license plate number is not in the WALES database because the plate and its number are phony (in which case

windshield, ... basically that's telling me that this is an unregistered car.... That's the 90 percent.

3. Officer Gallagher testified that he himself realized during the stop that the car was registered properly when he saw the registration sticker on the front windshield. By that time, however, Officer Gallagher had already detected the odor of marijuana emanating from the vehicle.

4. Thus, Sergeant Best testified that the error in Duckett's case occurred either because the

DMV did not enter the data correctly when he registered his vehicle or, conceivably, because of a communication failure between the DMV and WALES computer systems. According to a subsequent government proffer, further investigation revealed that a DMV employee had recorded the vehicle identification number ("VIN") of Duckett's car improperly. According to the proffer, WALES recognized that the VIN entry was improper and "kicked it back" to DMV for a correction that was never made.

the vehicle probably is unregistered).[5] Sergeant Best explained, however, that this third possibility is very unlikely in a case, such as this one, involving a metal license plate. As opposed to temporary "paper" tags, the metal plates "can't" be altered, Sergeant Best testified, and there was no evidence that metal license plates were being counterfeited; "in my years of experience," she added, "I've never seen that done."[6]

Sergeant Best's explanatory testimony was uncontested. In spite of that testimony, the trial judge ruled that it was objectively reasonable, and hence permissible under the Fourth Amendment, for Officer Gallagher to stop Duckett's car to determine whether it was registered, given the officer's experience that a blank screen response from WALES was correlated nine times out of ten with a vehicle that proved to be unregistered. With that ruling we disagree.

 As the trial judge recognized and the government readily acknowledges, the legality of the stop under the Fourth Amendment depends on whether Officer Gallagher had at least a reasonable, articulable suspicion that he was witnessing a traffic violation. In examining that question ourselves, we defer to the trial judge's material factual findings, but we review his ultimate legal conclusion *de novo*. *Trice v. United States*, 849 A.2d 1002, 1005 (D.C. 2004).

Officer Gallagher suspected that Duckett's car was unregistered because his inquiry about Duckett's license plate number elicited no information from the NCIC and WALES databases. Sergeant Best's testimony establishes, however, that the lack of information from NCIC and WALES did not warrant such an inference. The "NO RECORD" response from NCIC indicated only that the vehicle (and its license plate) had not been reported stolen. The blank screen response from WALES merely implied that, in all likelihood, either the DMV simply had not yet transmitted the registration information for Duckett's vehicle to WALES, or an error had occurred in the transmission. Neither response implied that the car was unregistered. That Duckett's metal D.C. license plate theoretically could have been a fake was too remote a possibility, especially compared to the two most likely and innocuous reasons for the blank screen response, to have justified the inference of non-registration that Officer Gallagher drew. The government has advanced no other possible rationale to explain how the blank screen that Officer Gallagher observed logically could have implied that Duckett was driving an unregistered vehicle.[7]

---

**5.** In contrast, as Sergeant Best testified, if the license plate is not phony and the registration has simply expired, that would not cause a blank screen response to a WALES check. Rather, in such a case a WALES check would retrieve information on the plate number, including the fact that the registration had expired. Thus, although Sergeant Best stated that a blank screen response from WALES could mean that the vehicle is unregistered, the only way that should be is if the license plate is a fake.

Of course, another possible explanation for a non-response from WALES is that the license plate number is recorded incorrectly in the WALES database. (This error obviously would not imply that the vehicle is unregistered.) Sergeant Best discounted this possibility however, testifying that in her two-year tenure as program manager, there have been no complaints of inaccurate vehicle registration data in the WALES system. Thus, the non-response phenomenon is attributable to the absence of registration data in the WALES database rather than the corruption of such data.

**6.** Sergeant Best was an eighteen-year veteran of the police department.

**7.** Prior to oral argument, we alerted the government to our concern on this score by issu-

Lacking such an explanation, the government has invoked cases holding that, at least in some circumstances, police officers reasonably may rely on erroneous information in law enforcement databases without violating the Fourth Amendment. *See, e.g., In re R.E.G.,* 602 A.2d 146, 149 (D.C. 1992) (upholding arrest where inaccurate computer information regarding stolen vehicle was attributable to short administrative delay in updating the database); *United States v. Miguel,* 368 F.3d 1150, 1154 (9th Cir.2004) (upholding traffic stop based on inaccurate information in computer database that defendant's registration had expired); *see also Arizona v. Evans,* 514 U.S. 1, 14–16, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (holding exclusionary rule inapplicable where police relied in good faith on arrest warrant misinformation that was attributable to a court employee's clerical error). There is a critical difference between those cases and this one, however: the difference between erroneous information and no information. Rightly understood, this is a case of no information. Officer Gallagher did not receive inaccurate information that Duckett's car was unregistered; he received no information about the registration status of Duckett's car (or its license plate) at all.[8]

 The government also relies, as did the trial court, on Officer Gallagher's personal experience—the unexplained ninety percent correlation he had found between blank screen responses from WALES and vehicles that (seemingly) turned out to be unregistered. In effect, the government suggests that Officer Gallagher's "success rate" in stopping other cars on insufficient grounds justified his stop of Duckett's car on the identical grounds. We are not persuaded. We recognize that a reasonable suspicion can be supported by "specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." *Trice,* 849 A.2d at 1006 (quoting *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In point of fact, however, we know too little about Officer Gallagher's experience—the number of vehicles he stopped, the reasons he chose to run records checks on those particular vehicles in the first place, how many of the vehicles really were unregistered (see footnote 2, *supra*), or any of the other surrounding circumstances—to be comfortable drawing any "reasonable inferences" from his self-reported ninety percent "success rate." Moreover, and perhaps more importantly, in the absence of a logical explanation for the correlation that Officer Gallagher reported in other cases, we simply cannot say that the correlation supported a reasonable articulable suspicion in

ing an order asking the parties to be prepared to address the following questions (among others):

How, if at all, did the absence in the WALES database of a record of the D.C. license plate number on appellant's car justify Officer Gallagher's inference that the car probably was not registered? Given that the license plate was a permanent metal tag issued by the Department of Motor Vehicles (DMV), did the absence of any information imply only that there was a problem of some kind with the WALES database?

8. Indeed, it is arguable that the most logical implication of a blank screen response to a

WALES check on a permanent metal D.C. license plate is that the vehicle *is* registered, albeit too recently for the information to have been incorporated in the police database. Be that as it may, the striking implication of the government's position in this appeal is that the police are entitled to pull over any recently registered vehicle on the supposition that it is not registered simply because of the lag time between registration and transmission of the information from the DMV to the Police Department. Absent any good reason to think the vehicle is unregistered, we recoil from such a conclusion.

Duckett's case. Ordinarily, a police officer "must have a particularized and objective basis for suspecting *the particular person stopped* of criminal activity." *Mayes v. United States,* 653 A.2d 856, 861 (D.C. 1995) (internal quotation marks and citations omitted) (emphasis added); *see also Trice,* 849 A.2d at 1006; *Carr v. United States,* 758 A.2d 944, 947 (D.C.2000). Whatever Officer Gallagher's experience in traffic stops of others, we think that the necessary particularized and objective basis for suspecting Duckett was absent here.

We conclude that Duckett's motion to suppress evidence should have been granted. His conviction therefore must be reversed.

*So ordered.*