**Affirmed and Majority and Dissenting Opinions filed April 16, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00406-CR

**ERNESTO VILLARREAL, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 15-DCR-069295**

## D I S S E N T I N G   O P I N I O N

Despite ample jurisprudence from other courts that have examined this issue, the majority concludes the absence of a database record pertaining to vehicle registration is evidence of criminal wrongdoing that authorizes officers to initiate traffic stops, even when the officer knows (1) there are legitimate reasons a registered vehicle may not appear in the database and (2) s/he does not know how often the database is updated. I disagree with the majority's analysis, conclude the absence of a record under these circumstances is nothing more than the absence of

evidence, and believe the majority's conclusion erroneously diminishes the rights guaranteed to the People by the Texas and United States constitutions. As a result, I dissent.

In *Duckett v. United States*, 886 A.2d 548 (D.C. Cir. 2005), the District of Columbia Court of Appeals reversed the trial court's denial of a motion to dismiss on materially comparable facts. There, the arresting officer "arbitrarily" entered Duckett's license plate number and "No information was forthcoming; the only message read, 'NO RECORD'". *Id.* at 549. In the officer's experience, 90% of the vehicles he stopped after receiving the same message "turned out to be unregistered (a traffic offense)." *Id.* After stopping the vehicle, the officer smelled (then recovered) marijuana. *Id.* at 550. Duckett's vehicle was registered. *Id.*

At the suppression hearing on the possession charge, the Sergeant manager of the Metropolitan's Police Department testified that the "NO RECORD" return from the National Criminal Information Center database simply meant that the vehicle had not been reported stolen. The arresting officer, however, also queried "a local police database" that "contain[ed] vehicle registration data, downloaded to it from the DMV and updated on a weekly basis." *Id.* The fact that the local police database "had no information on a properly registered vehicle . . . was not unusual[.]" *Id.* The Sergeant testified the absence of such a record could have been caused by either (1) registering a vehicle "after the last weekly update" or (2) "a clerical or computer error of some kind [that] has interfered with the DMV's download of the information." *Id.* Although it was possible that "the plate and its number [were] phony," the officer conceded this was unlikely based on his "years of experience." *Id.* at 551.

The District of Columbia Court of Appeals reversed and concluded, "The blank screen response from [the local police database] merely implied that, in all likelihood, either the DMV simply had not yet transmitted the registration

2

information . . . or an error had occurred in the transmission. Neither response implied that the car was unregistered." *Id.* The officer "did not receive inaccurate information that Duckett's car was unregistered; he received no information about the registration status of Duckett's car (or its license plate) at all." *Id.* at 552.

The court rejected the government's argument that the officer's personal "'success rate' in stopping other cars on insufficient grounds justified his stop of Duckett's car on the identical grounds." *Id.* After acknowledging it knew "too little" about the officer's experience (*id.*), the court also observed that "perhaps more importantly, in the absence of a logical explanation for the correlation that Officer Gallagher reported in other cases, we simply cannot say that the correlation supported a reasonable articulable suspicion in Duckett's case." *Id.* at 552-53. Citing its own precedent, the court held that officers "must have a particularized and objective basis for suspecting *the particular person stopped* of criminal activity." *Id.* at 553 (emphasis in original). The court concluded "the necessary particularized and objective basis for suspecting Duckett was absent[.]" *Id.*

I see no reason why the Fourth Amendment should extend fewer protections to the People of Texas than it does to the People of the District of Columbia (and know of no reason the Texas Constitution would not protect Villarreal). I find no error in the court's reasoning and am not alone. *See State v. Daniel*, 446 S.W.3d 809, 814-15 (Tex. App.—San Antonio 2014, no pet.) (affirming the trial court's grant of a motion to suppress where the State stipulated that the only reason for pulling Daniel over was because the officer could not confirm whether he had insurance); *Contraras v. State*, 309 S.W.3d 168, 172-73 (Tex. App.—Amarillo 2010, pet. ref'd) (mem. op.) (reversing the denial of a motion to suppress where database information concerning Contraras's insurance was "unavailable"; "Even viewed in the light most favorable to the trial court's ruling, the responses the officers described here give no reasonable basis for an inference appellant's car

3

was not insured."); *Gonzalez-Gilando v. State*, 306 S.W.3d 893, 894 (Tex. App.— Amarillo 2010, pet. ref'd) ("In other words, the information garnered from the database [lawfully registered but unavailable insurance information] did not provide the troopers basis to confirm whether or not such insurance existed."); *id.* at 896 ("[T]he information obtained by the officers while pursuing those technological means was hardly suggestive of anything other than the unknown. Again, the officers simply were informed that the data they desired was unavailable."); *see also Orhorhaghe v. I.N.S.*, 38 F.3d 488, 498 (9th Cir. 1994) ("The absence of any record of Orhorhaghe's entry into the United States from the INS computer system did not provide any additional basis for suspecting that he was an illegal alien rather than a legal alien or American citizen."); *id.* at 499 ("[T]he absence of any entry record for Orhorhaghe provided no information beyond that provided by his foreign-sounding name alone."); and *Crawford v. State*, 355 S.W.3d 193, 197 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (distinguishing *Gonzalez-Gilando* and *Contraras* because there, the State "did not develop the evidence to demonstrate that the officer's belief was reasonable, such as what the database meant in reporting that insurance information was unavailable, explaining why such information would be unavailable, or otherwise illustrating the accuracy of the database"). *Cf. Gonzalez v. Immigration & Customs Enf't*, 416 F. Supp. 3d 995, 1019 (C.D. Cal. 2019) ("These cases demonstrate that relying on the absence of information in a database known for being incomplete is unreasonable.").

Importantly, the majority acknowledges several material facts: (1) the officer had personally encountered registered vehicles that did not appear in the database he used; (2) the officer did not know what caused some registered vehicles to have "no record"; (3) the officer did not know the "lag time" between registration and the database updates; and (4) "Appellant adduced evidence that the traffic stop

occurred on a Sunday, and the truck had been registered the prior Friday."

The majority also cites to *United States v. Broca-Martinez*, 855 F.3d 675 (5th Cir. 2017). First, *Broca-Martinez* is distinguishable; there, the officer believed an "unconfirmed" return from the database meant "no insurance" and was right while here, the officer knew he did not know crucial facts about the database and guessed wrong. Second, the majority's first citation thereto excludes the crucial qualifier of the sentence: "A state computer database indication of insurance status may establish reasonable suspicion *when the officer is familiar with the database **and the system itself is reliable**.*" *Id.* at 680 (emphases added).

Third (and perhaps most importantly), *Broca-Martinez* cites to the same case Villarreal cites, *United States v. Esquivel-Rios*, 725 F.3d 1231 (10th Cir. 2013) (Gorsuch, J.). In *Esquivel-Rios*, the Tenth Circuit found that the arresting officer knew there was a reason to doubt the reliability of the database in question; there, he was told that the temporary tags in question that did not show up in the database "usually" did not appear therein. The court was particularly concerned about what it did not know concerning the reliability of the database, including how long it took relevant information "to reach the database." *Id.* at 1236. On remand, the trial court heard testimony that the database did not have the relevant information and that the officer in question could not access it. *See United States v. Esquivel-Rios*, 39 F. Supp. 3d 1175, 1183-84 (D. Kan. 2014), *aff'd*, 786 F.3d 1299 (10th Cir. 2015). The court therefore "ha[d] no choice but to conclude that the 'negatory on record, not returning' report that dispatch provided . . . did not qualify as particularized evidence that the vehicle was not properly registered." *Id.* at 1185. This reasoning should apply with equal force to Villarreal.

Here, the arresting officer knew there was "lag time" and that he did not know how long it was or what caused it. The courts in *Esquivel-Rios* and *Duckett* both had more facts concerning the reliability of the relevant database *and* the

5

relevant officer's personal experience; both still concluded they knew too little. We have no facts concerning (*inter alia*) the reliability of the database, what the "lag time" is, or how long it takes that information to reach officers in the field. *See Gonzalez-Gilando*, 306 S.W.3d at 897 ("[W]ithout other evidence developing the source of the information comprising the database, explaining what was meant when insurance information was unavailable, explaining why such information would be unavailable, illustrating the accuracy of the database, establishing the timeliness of the information within the database, depicting how often those using the database were told that insurance information was unavailable, proving that the program through which the database was accessed was even operating at the time, and the like, we cannot accept the deputy's inference as reasonable."); *see also Esquivel-Rios*, 725 F.3d at 1236 (expressing a concern that the court did not know how long it took information to reach the database).

The majority's citations to *State v. Como*, 821 S.W.2d 742 (Tex. App.— Beaumont 1992, pet. ref'd), and *State v. Hammitt*, 825 S.W.2d 131 (Tex. App.— Beaumont 1992, pet. ref'd), are inapposite. There, the Ninth Court of Appeals concluded the officer's investigation of Como was reasonable because "there was no record of the license plate" (*Como*, 821 S.W.2d at 743), two individuals ran when they saw the police car (*id.* at 742-43), and the events took place in a "high crime area" at 1:00 a.m. *Id.* at 742. The present case presents no comparable fact, particularly when viewed in light of the officer's known ignorance as to how often the database in question was updated.

The majority concludes that innocent explanations for "no record" returns support reasonable suspicion. This conclusion evidences a fundamental misapprehension of constitutional protections. The majority's invocation of *Hammitt, Leming*, and *Ellis* presupposes that the arresting officer had "reasonable articulable facts" despite the properly preserved question on appeal. Approving of

6

the officer's conduct effectively signals that Texas officers are permitted to detain the People even when there is no reliable evidence capable of supporting reasonable articulable facts that generate reasonable suspicion. This is not the law.

Under these circumstances, the database at issue was not reliable enough to support reasonable and particularized suspicion. Instead, the arresting officer had facts which would lead all reasonable officers to know that law-abiding citizens will inevitably appear to have "no record" for unknown reasons and for unknown periods of time (also for unknown reasons). Even when we ignore the inevitable implications beyond the instant facts, this case stands for the proposition that people who register their vehicles on Fridays can permissibly be stopped by officers over the weekend, even when those same officers know the database they are using has an unknown "lag time" for unknown reasons.

This "suggestion of wrongdoing diminishes even further as the number of innocuous no returns increases" (*Esquivel-Rios*, 725 F.3d at 1237), but again, we lack information concerning the number of innocuous no returns. If legitimate registrations on Fridays are almost never placed in the database by Sunday, then any given "no record" return on Sundays "may tell a reasonable officer next to nothing[.]" *See id.* "[I]t is hard to imagine how a 'no return' report in those circumstances could form a 'particularized' basis to suspect wrongdoing." *Id.*

The "relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *United States v. Sokolow*, 490 U.S. 1, 10 (1989) (quoting *Ill. v. Gates*, 462 U.S. 213, 243-44 n.13 (1983)). The majority's arbitrary and capricious suspension of Fourth Amendment protections for people who register their vehicles in compliance with the law relies upon an unknown governmental procedure with unknown reliability governed by an unknown timeframe updated at unknown intervals and subject to unknown oversight. I cannot support such an unreasonable

7

application of law that permits officers to essentially fabricate suspicion based on the absence of a record, particularly when the majority's analysis is contrary to carefully considered case law both from our sister courts and beyond. I therefore reject the majority's conclusion that a "no record" return from this database under these circumstances means there was evidence that generated constitutionally mandated reasonable suspicion. I would reverse the trial court's order denying Villarreal's motion to suppress.


/s/     Meagan Hassan
Justice


Panel consists of Chief Justice Frost and Justices Wise and Hassan (Wise, J., majority).

Publish — Tex. R. App. P. 47.2(b).