*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-CF-0993

DANIEL GRIFFIN, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2021-CF2-002321)

(Hon. Jennifer A. Di Toro, Trial Judge)

(Submitted December 17, 2025          Decided March 19, 2026)

*Sean R. Day* for appellant.

*Edward R. Martin, Jr.*, United States Attorney at the time the brief was filed, with whom *Chrisellen R. Kolb*, *Nicholas P. Coleman*, *Mikela Cuffy*, *Michael Dal Lago*, and *Kevin Birney*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH, EASTERLY, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellant Daniel Griffin was arrested after a traffic stop led to the recovery of a handgun and PCP. On appeal from his subsequent convictions, Mr. Griffin argues that the stop violated his rights under the Fourth Amendment and that the trial court therefore erroneously denied Mr. Griffin's

motion to suppress evidence. We agree, and we therefore vacate Mr. Griffin's convictions and remand the case for further proceedings.

## I. Factual and Procedural Background

Mr. Griffin's suppression motion argued that the police had an insufficient basis to conduct the stop. The trial court held an evidentiary hearing on the motion, and the evidence introduced at the hearing includes the following.

Metropolitan Police Department officers stopped Mr. Griffin, who was driving a car. After Mr. Griffin pulled over, an officer asked for Mr. Griffin's registration. Mr. Griffin opened and then quickly closed the glove box, but not before an officer saw a handgun inside. A subsequent search uncovered the handgun as well as PCP.

The police stopped Mr. Griffin for two reasons: Mr. Griffin failed to use a turn signal when turning and the car's front windshield was tinted. According to the officer who testified at the hearing, any "tint on the front windshield is completely illegal" in the District of Columbia, so the tint on the car's windshield was "illegal period." The officer testified that the entire front windshield was tinted and that the tint was visible on the officer's body-worn-camera footage. The officer did not measure the level of light transmittance permitted by the windshield. The officer

did not know whether Mr. Griffin was issued a notice of infraction for either a failure to signal or a windshield-tint violation.

At the close of the hearing, Mr. Griffin argued that the officer did not have a lawful basis to stop Mr. Griffin. With respect to the alleged tint violation, Mr. Griffin argued that the officer was mistaken that any tint on a front windshield is unlawful, because front-windshield tint is allowed up to a specified level of light transmittance. *See* D.C. Code § 50-2207.02(a)(1) (permitting varying levels of front-windshield tint depending on type of vehicle). With respect to the alleged failure to signal, Mr. Griffin suggested that there was no evidence corroborating the testimony that Mr. Griffin failed to signal. Mr. Griffin also argued that the officer did not issue a notice of infraction for either a failure to signal or a windshield-tint violation.

The trial court denied the motion to suppress. The trial court found that the entire front windshield was tinted. The trial court appeared to acknowledge that the officer was mistaken that it is unlawful to have any tint at all on a front windshield. Nevertheless, the trial court reasoned that: (1) the officer needed only probable cause, not absolute certainty, that an infraction was being committed; (2) "tinted windshields are largely not legal in D.C."; and (3) although the officer did not know the exact level of tint at the time of the stop, the officer had probable cause to believe that a tint violation had been committed. The court did not rely upon Mr. Griffin's

alleged failure to signal, stating that it was "worth questioning" whether the officer saw a failure to signal at all, because no notice of infraction was issued for that alleged failure and the turn signal (or lack thereof) was not visible on the body-worn-camera footage.

## II. Legal Framework

In an appeal challenging a trial court's ruling on a motion to suppress evidence, this court "must defer to the trial court's findings of evidentiary fact and view those facts and the reasonable inferences therefrom in the light most favorable to sustaining the ruling." *Mitchell v. United States*, 314 A.3d 1144, 1150 (D.C. 2024) (citation modified). "Whether officers had reasonable suspicion to justify a stop" on a given set of facts "is a question of law that we review de novo." *Id.* (citation modified).

Investigative traffic stops are lawful under the Fourth Amendment if the police have reasonable, articulable suspicion that the person being stopped is violating traffic laws. *Duckett v. United States*, 886 A.2d 548, 551 (D.C. 2005). The requirement of reasonable, articulable suspicion "is neither onerous nor toothless." *Maye v. United States*, 260 A.3d 638, 645 (D.C. 2021). Reasonable, articulable suspicion requires "a particularized and objective basis for suspecting the particular person stopped" of breaking the law. *Heien v. North Carolina*, 574 U.S. 54, 60

(2014) (citation modified). The officers' suspicion must be "supported by specific and articulable facts." *Pridgen v. United States*, 134 A.3d 297, 301 (D.C. 2016) (citation modified). Reasonable, articulable suspicion demands more than "a mere hunch" of unlawful activity but "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (citation modified). Officers must have "at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). The determination whether reasonable, articulable suspicion exists must be made based on the "totality of the circumstances." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation modified).

The government bears the burden of demonstrating that officers had reasonable, articulable suspicion at the time the stop was made. *Mitchell*, 314 A.3d at 1150.

### III. Analysis

In denying the motion to suppress, the trial court relied solely on the alleged tint violation. We conclude that the United States failed to present sufficient evidence to support a conclusion that the police had a reasonable, articulable suspicion that Mr. Griffin's front windshield was illegally tinted.

As the United States now acknowledges, and contrary to the officer's understanding of the law, the D.C. Code permits front windshields to be tinted at varying levels of tint depending on the type of vehicle. D.C. Code § 50-2207.02(a)(1). The United States now appears to agree with Mr. Griffin that in this case that limit was 70% light transmittance. *Id.* at § 50-2207.02(a)(1)(A) (vehicle other than minivan may not be operated with front windshield that allows "less than 70% light transmittance"). The United States appropriately does not contend on appeal that it proved that Mr. Griffin's windshield was actually tinted at a level exceeding that statutory limit. That is not dispositive, however, because the stop would be lawful if the officer had a reasonable, articulable suspicion at the time of the stop that the degree of tinting was unlawful.

We do not see sufficient evidence to support a conclusion that the officer had a reasonable, articulable, suspicion at the time of the stop that Mr. Griffin's windshield was tinted so as to transmit less than 70% of light. The officer did testify that the windshield was "darker than what [he] believed the window should have been" and that, in his training and experience, the "tint violate[d] the D.C. Code governing tint -- the allowable tint." Because the officer incorrectly believed that the allowable amount of tint was zero, however, that testimony sheds no light on whether the officer could reasonably have believed at the time of the stop that the windshield transmitted less than 70% of light.

The other evidence at the hearing also did not suffice to establish that the police had a reasonable, articulable suspicion at the time of the stop that Mr. Griffin's windshield transmitted less than 70% of light. The officer testified that "[t]he front windshield was tinted" and that body-worn-camera footage showed that the windshield "does appear to be tinted." That evidence supports a conclusion that the window was visibly tinted but does not provide adequate support for a reasonable belief that the windshield was tinted to an unlawful degree.

We also have reviewed the body-worn-camera footage that was introduced into evidence at the hearing. Consistent with the officer's testimony about that footage, the front windshield is visibly tinted. The footage does not, however, demonstrate that the window reasonably appeared to be tinted so as to transmit less than 70% of light, the officer did not testify as much, and the trial court made no such finding. We see no basis upon which this court could reach such a conclusion on appeal.

The United States argues that we should also consider on appeal the trial testimony of a defense witness that the windows of the car "were pretty tinted." *See generally, e.g.*, *Wade v. United States*, 173 A.3d 87, 92 (D.C. 2017) ("It is permissible, however, for this court to rely on undisputed trial evidence to affirm the trial court's ruling on a suppression motion."). We do not view this evidence as

providing adequate support for a conclusion that the police had reasonable, articulable suspicion at the time of the stop that Mr. Griffin's front windshield was tinted so as to transmit less than 70% of light.

The United States bore the burden of introducing sufficient evidence to support a conclusion that the police had a reasonable, articulable suspicion at the time of the stop that Mr. Griffin's windshield was excessively tinted. *Mitchell*, 314 A.3d at 1150. We hold that the United States failed to carry that burden in this case.

The United States makes three arguments in support of the constitutionality of the stop, none of which we find persuasive. First, the United States appears to argue that the mere existence of noticeable tint on Mr. Griffin's front windshield permitted the police to stop the car to further investigate whether the amount of tint was or was not excessive. We disagree. At its broadest, the United States' reasoning appears to suggest, for example, that the police could stop any vehicle to determine whether the vehicle exceeded applicable vehicle weight limits, even if the officers had no specific basis for believing that the particular vehicle being stopped actually did exceed those limits. To the contrary, the police do not have general authority to conduct investigative stops any time it is merely possible that an offense has been or is being committed and further investigation would enable the police to find out. *See, e.g.*, *In re T.T.C.*, 583 A.2d 986, 990 (D.C. 1990) ("Possible suspicion . . . is not

the same as . . . specific and articulable suspicion.") (citation modified). Rather, reasonable, articulable suspicion must exist before the investigative stop. *See, e.g.*, *Watson v. United States*, 43 A.3d 276, 282 (D.C. 2012) ("A police officer conducting a traffic stop must have a reasonable, articulable suspicion that [the officer] was witnessing a traffic violation *before* [the officer] may stop a vehicle and its occupants.") (citation modified and emphasis added).

Somewhat more narrowly, the United States relies on the decision of a federal district court in *United States v. Person*, 754 F. Supp. 3d 231, 240-41 (D.D.C. 2024), which upheld the legality of a traffic stop based on an officer's suspicion that a car's windows were unlawfully tinted. In *Person*, however, the United States introduced substantial evidence to support the reasonableness of the officer's suspicion. *Id.* Specifically, an officer involved in the stop testified that (1) tint that does not allow 70% light transmittance is unlawful; (2) the officer had participated in hundreds of tint-violation stops and had seen windows measured for tint on "myriad" occasions; (3) the applicable standard permits only very light tint; and (4) the officer immediately recognized that the car at issue was "tinted darker than the DC local standard." *Id.* at 240 (citation modified). In addition, body-worn-camera footage showed that the car's windows were "darkly tinted." *Id.* at 241. No comparable evidence was introduced in the present case.

Second, the United States argues that the stop was lawful because the stop rested on a reasonable mistake of law. *See generally Heien*, 574 U.S. at 57 ("A [reasonable] mistake of law can nonetheless give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment.") (citation modified). *Heien*, however, does not support a finding of reasonable, articulable suspicion in Mr. Griffin's case. In *Heien*, an officer stopped a car because, based on the officer's understanding of a state traffic law, the car's brake lights violated the law. *Id.* at 57-58, 67-68. Although a state court later interpreted the state's brake-light law differently than the officer had, the Supreme Court found that the law was unclear, the officer's mistake of law was objectively reasonable, and the mistake therefore did not render the traffic stop unconstitutional. *Id.* at 66-68.

By contrast, the windshield-tint statute in D.C. is clear: in the present case, the tint on Mr. Griffin's windshield violated the law only if the windshield "allow[ed] less than 70% light transmittance." D.C. Code § 50-2207.02(a)(1)(A). The officer's mistaken belief that any front windshield tint is impermissible was therefore not reasonable. *Heien* does not absolve officers' unreasonable misunderstanding of the law: "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws [the officer] is duty bound to enforce." *Heien*, 574 U.S. at 67.

Third and finally, the United States suggests in a footnote that we should, if necessary, remand the case for the trial judge to make specific factual findings and a ruling on the alleged failure to signal before turning. We see no basis for a remand on that issue. As Mr. Griffin points out, the failure to use a signal when turning is unlawful only "if any other traffic may be affected by the movement." 18 D.C.M.R. § 2204.3. As Mr. Griffin further points out, the United States introduced no evidence at the suppression hearing to support a conclusion that the officer reasonably believed that Mr. Griffin's alleged failure to signal before turning might have affected any other traffic. The United States' brief in this court did not respond to Mr. Griffin's arguments on these points, and it therefore is undisputed in this court that the record at the suppression hearing would not support a conclusion that the police had reasonable, articulable suspicion that Mr. Griffin violated the traffic-signal regulation.

The United States has not requested that this court remand with a direction that the trial court reopen the record for the taking of additional evidence, and we see no reason why the United States would be entitled to reopening of the record given that the United States had a full opportunity to develop the record in the first instance. *See, e.g.*, *Barnett v. United States*, 525 A.2d 197, 200 (D.C. 1987) ("We are not persuaded that the government should have a second chance to elicit facts supporting an affirmance of the trial court's ruling as the record indicates that it had

a full and fair opportunity to present whatever facts it chose to meet its burden" under the Fourth Amendment.). We therefore decline to remand the case for further consideration of the alleged turn-signal violation.

The United States does not dispute that if the police lacked reasonable, articulable suspicion to support the stop of Mr. Griffin, the evidence obtained as a result of the ensuing search must be suppressed. Nor does the United States argue that the erroneous admission of that evidence was harmless. We therefore vacate Mr. Griffin's convictions and remand the case for further proceedings. *See Randolph v. United States*, 882 A.2d 210, 223 (D.C. 2005) ("We conclude that where, as here, the government has failed to claim in timely fashion that [an] erroneous [trial-court ruling] was harmless in the traditional sense, we should apply the harmless error doctrine only when harmlessness is obvious.").

*So ordered.*